UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHNSON CONTROLS, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>YANKEE TECHNOLOGY, INC., )<br>STEPHEN TESTA, )<br>and STANLEY P. RYCZEK, )<br><br>Defendants. ) | **05 - 3 0 1 4 4 - MAP**<br>Civil Action<br>No.<br><br>**FILING FEE PAID:**<br>RECEIPT # _305975_<br>AMOUNT $ _250.00_<br>BY DPTY CLK _MW_<br>DATE _6/21/05_ |

## PLAINTIFF'S COMPLAINT

This matter involves claims arising out of the actions of former employees of the plaintiff, Johnson Controls, Inc. ("JCI"), together with a competitor of JCI, Yankee Technology, Inc. ("Yankee"), to misappropriate proprietary and confidential information and trade secrets belonging to JCI, and to otherwise engage in unfair competition against JCI. As a result, JCI seeks relief, including injunctive relief, for breach of contract, interference with contractual and advantageous relations, misappropriation of trade secrets and confidential information, and unfair trade practices.

## PARTIES

1.      The plaintiff, JCI, is a Wisconsin corporation with its principal place of business located in Milwaukee, Wisconsin. JCI is engaged in the business of, among other things, the sale, installation, servicing, and operation of building control systems, including heating, ventilating, air conditioning, lighting, and fire safety equipment.

2.     The defendant, Yankee, is a Massachusetts corporation with its principal place of business located in Ludlow, Massachusetts. Yankee is engaged in the business of installation and maintenance of building controls systems, and is a direct business competitor of JCI.

3.     The defendant, Stephen Testa ("Testa"), is a former sales Account Executive of JCI who, upon information and belief, resides at 72 Harrington Road, Broad Brook, Connecticut.

4.     The defendant, Stanley P. Ryczek ("Ryczek"), is a former Lead Systems Specialist of JCI who, upon information and belief, resides at 111 Fox Run Drive, Ludlow, Massachusetts.

5.     Testa and Ryczek are currently employed by Yankee and engaged in direct and/or indirect competition with JCI on behalf of Yankee.

## JURISDICTION AND VENUE

6.     Jurisdiction is proper in this Court pursuant to 28 USC § 1332 because there is diversity of citizenship, and the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees. In addition, personal jurisdiction is proper over each of the defendants pursuant to Mass. Gen. L. c. 223A, §§ 2, 3.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims set forth herein occurred in the District of Massachusetts. In addition, venue is proper in the Western Division of the District of Massachusetts pursuant to LR 40.1(D) because, upon information and belief, the only parties residing in Massachusetts reside in the Western Division.

## GENERAL ALLEGATIONS

### *JCI's Business Operations*

8.      JCI has been a leader in the building controls industry since the Company was founded in 1885, by Professor Warren Johnson, the inventor of the electric thermostat. Among other services, JCI engineers, manufactures, installs, and maintains building heating, ventilating, air conditioning, lighting, and fire safety equipment.

9.      JCI performs installation and maintenance of the aforementioned equipment and systems nationwide, including in Western Massachusetts.

10.      Among other things, JCI relies on the development and maintenance of customer relationships and goodwill as a significant business asset.

11.      In order to protect its confidential and proprietary information, trade secrets, customer goodwill, and other business assets and interests, JCI requires employees to sign employment agreements that include confidentiality and non-compete provisions.

### *Testa's Employment With JCI*

12.      Testa worked for JCI from 1988 until 2005, at which time he voluntarily resigned his employment.

13.      Testa began working at JCI on or about March 14, 1988 as an Application Engineer. At the time he was hired, as a condition of his employment, Testa signed an employment agreement that contained non-competition and confidentiality provisions.

14.      For the majority of his career with JCI, and at the time of his resignation, Testa was an Account Executive responsible for HVAC Controls sales for both: (1) installation during

3

the construction process; and (2) continuing maintenance service for customers. In this position,
Testa was the principal contact for numerous JCI customers, which include clients and
contractors, and was also responsible for soliciting and developing new business and customers.

15.    As an Account Executive, Testa was responsible for sales in Northern
Connecticut and Western Massachusetts, including, but not limited to, the Springfield and
Worcester areas.

16.    Testa worked out of JCI's Springfield, Massachusetts branch office from 1990
until approximately August 1, 2004, at which time the office was consolidated with the Hartford,
Connecticut branch office and relocated to Windsor, Connecticut.

17.    On or about February 3, 1999, in consideration of his continued employment by
JCI, Testa executed a subsequent Employment Agreement that contained, among other things,
the following confidentiality and non-competition provisions:

> **2. CONFIDENTIALITY.** For a period corresponding to the term of
> employment and thereafter, as long as the information remains
> confidential or proprietary, I shall not disclose to others, copy or use,
> except as authorized by Johnson Controls, any confidential or proprietary
> information of Johnson Controls or its subsidiaries and affiliates
> comprising any data or information, however embodied, acquired or
> created, concerning any aspect of the business of Johnson Controls that I
> may acquire or originate during my employment. This clause is not to be
> construed as prohibiting the use of my trade and professional skills so long
> as such does not violate confidential or proprietary information.
>
> Upon termination of my employment, I will surrender to Johnson controls
> any and all documents that I have in my possession incorporating any such
> confidential or proprietary information, including all copies thereof
> whether in human or machine readable form.
>
> **3. NON-COMPETITION.** For one year following the date of
> termination I will not perform services directly or indirectly in or for a
> business competitive with Johnson Controls, with respect to: 1) existing
> Johnson controls customers or potential customers served or solicited by

4

me or someone under my supervision while I was a Johnson Controls employee, and/or 2) potential customers who within my last 9 months of employment received or were about to receive proposals from any employee of Johnson Controls with whom I had contact. This covenant not to unfairly compete will not apply to contractors or subcontractors with whom Johnson Controls has existing or proposed business.

In addition to the foregoing provisions, the Employment Agreement contained a non-solicitation clause that prohibited Testa from soliciting JCI employees to seek employment with any competitor of the Company. A copy of Testa's February 3, 1999 Employment Agreement (hereinafter the "Testa Agreement") is attached hereto as Exhibit A.

18.    On or about January 3, 2005, Testa voluntarily resigned his employment at JCI.

### Ryczek's Employment With JCI

19.    Ryczek worked for JCI from 1991 until 2005, at which time he voluntarily resigned his employment.

20.    Ryczek was hired by JCI on or about September 23, 1991 as a Systems Representative. During the course of his employment Ryczek held several key positions, including, but not limited to, Project Engineer and Systems Application Engineer. At the time of his resignation, he held the title of Lead Systems Specialist.

21.    During the course of his employment and at the time of his termination, Ryczek was responsible for maintaining systems service contracts, and was a principal contact for numerous JCI customers.

22.    Ryczek was principally responsible for JCI customers located in Western Massachusetts, including, but not limited to, the Springfield and Worcester areas.

23.    Ryczek worked out of JCI's Springfield, Massachusetts branch office from the

commencement of his employment until the office was consolidated and relocated to Windsor, Connecticut on or about August 1, 2004.

24.    During the course of his employment, Ryczek worked closely with Testa, and the two had many clients for whom they shared responsibilities.

25.    On or about September 23, 1991, as a condition of his employment, Ryczek was required to sign an Employment Agreement that included confidentiality and non-competition provisions.  Specifically, the non-competition provision provided that:

**3.    NON-COMPETITION.**  I will not perform services directly or indirectly in a business competitive with Johnson Controls, Inc. for, or at the premises of, any customer of Johnson Controls, Inc.  This agreement not to unfairly compete is limited to:

a.    Termination of my employment only in those cases where I voluntarily resign or I am terminated for good cause.  It will not apply in cases where the work force is reduced for economic reasons or I am terminated for unsatisfactory job performance.

b.    One year following the date of termination.

c.    My branch territory at termination.

d.    Existing Johnson Controls customers or potential customers, who have received or were about to receive proposals, within the same branch territory.  It will not apply to contractors or subcontractors with whom Johnson Controls has existing or proposed business.

e.    And, those situations in which my branch or location at termination is located within a state or province in which the laws allow enforcement of this clause by the courts.

A copy of Ryczek's September 23, 1991 Employment Agreement (hereinafter the "Ryczek Agreement") is attached hereto as <u>Exhibit B</u>.

26.    On or about December 15, 2004, Ryczek gave notice of his resignation from JCI, and his last day worked was January 7, 2005.  Prior to his departure, Ryczek indicated that he

was leaving to pursue his own business.

### Confidential and Proprietary Information of JCI

27    In connection with their employment at JCI, Testa and Ryczek had regular access, and were privy, to JCI's confidential, proprietary and trade secret business information. For example, Testa and Ryczek had regular access to documents and information regarding, among other things, JCI's customer base and customer lists, customer preferences and other detailed customer-related information, business presentations and/or proposals, business processes and summaries, profit margins, business revenues, pricing and bidding strategies, employee lists, sales and marketing information, training and operations material and memoranda, computer software and systems, and/or financial information relating to JCI's business.

28.    Testa and Ryczek acknowledged their access to such information, as well as JCI's strong interest in safeguarding such information, through the execution of their respective Employment Agreements, which specifically provide for the protection of such information.

29.    Testa and Ryczek held positions of trust and confidence with JCI, and were entrusted with a critical function of fostering and developing customer relationships and goodwill on behalf of JCI so that JCI could increase business.

30.    Testa and Ryczek were key contacts for sales and service matters for JCI customers, particularly in Western Massachusetts, which customers remain extremely important to JCI and its business operations.

### Testa and Ryczek's Employment With Yankee

31.    Following their resignations from JCI, both Testa and Ryczek went to work for Yankee—a direct competitor of JCI in the controls systems business.

32.   Testa and Ryczek have been and are currently engaged in direct and/or indirect competition with JCI on behalf of Yankee to the detriment of JCI.

33.   Upon information and belief, Testa and Ryczek have performed work and/or other services on behalf of Yankee for JCI customers that they served and/or solicited while employed by JCI, including, but not limited to, the following: Williams College, Clark Art Institute, Cooley Dickinson Hospital, Baystate Medical Center, Springfield Shriners Hospital, TJ Conway Co., Inc., and Greenfield Community College.

34.   Upon information and belief, Testa and Ryczek have solicited and/or performed work on behalf of Yankee for potential JCI customers, who received or were about to receive proposals from JCI during the course of their respective employment with JCI.

35.   Upon information and belief, the defendants, individually and/or collectively, have made and/or will continue to make proposals and provide services to JCI's existing and prospective customers with knowledge of JCI confidential and proprietary information and trade secrets. Because of the confidential information to which they were and are privy, the defendants have been able to undercut JCI's proposals and engage in unfair competition.

36.   For example, on or about June 8, 2005, JCI learned that a Williams College project (Agard Project) for which it submitted a bid was awarded to Yankee, which underbid JCI by approximately $3,300.00. In addition, on or about May 23, 2005, JCI learned that it had lost another bid for a Williams College project (Student Center Project) to Yankee. Both Testa and Ryczek were key representatives of JCI to Williams College during their employment at JCI. In fact, Testa spent approximately one year working on the Williams College Student Center Project on behalf of JCI prior to his resignation. JCI also lost a bid proposal to Yankee for work

8

on the Springfield Federal Courthouse Project, which project Testa worked on for approximately one year prior to leaving JCI.

37.    Upon information and belief, the defendants, individually and/or collectively, have utilized confidential and proprietary information of JCI, including, but not limited to, JCI documents and customer information, in direct and/or indirect competition with JCI to its detriment.  For example, upon information and belief, the defendants have provided proprietary technical hardware and network schematics belonging to JCI (known as "as builts") to customers and/or prospective customers.

## *JCI's Efforts to Protect Its Confidential and Proprietary Information*

38.    JCI has taken all reasonable and necessary steps short of litigation to protect its interests.

39.    On February 3, 2005, JCI, through its counsel, sent a demand letter to Testa reminding him of his obligations under the Testa Agreement and informing him that he must cease any competition with JCI in accordance with his agreement.  A copy of the February 3, 2005 letter is attached hereto as Exhibit C.

40.    After JCI learned that the Springfield Federal Courthouse Project had been awarded to Yankee, JCI sent Testa a "Second and Final Notice" on March 30, 2005.  Among other things, the letter referenced the Springfield Project and demanded that Testa sign an acknowledgement that he was not violating and would abide his agreement, and that he would return any JCI materials in his possession.  This letter was also copied to the head of Human Resources at Yankee.  A copy of the March 30, 2005 letter is attached hereto as Exhibit D.

41.    On or about April 4, 2005, JCI's counsel received a letter from an attorney on

behalf of Yankee and Testa, which letter denied that Testa had any JCI materials in his possession.

42.    On April 21, 2005, JCI sent a letter to Yankee and Testa's attorney with an acknowledgment form for Testa to sign indicating, among other things, that he would honor his obligations under the Agreement. The acknowledgment form was never returned and subsequent follow up calls from JCI's counsel have gone unreturned. A copy of the April 21, 2005 letter is attached hereto as Exhibit E.

43.    On June 13, 2005, JCI sent a demand letter to Ryczek reminding him of his obligations under the Ryczek Agreement and informing him that he must cease any competition with JCI in accordance with his agreement. A copy of the June 13, 2005 letter is attached hereto as Exhibit F.

44.    Testa and Ryczek have failed to acknowledge any intention of complying with the obligations under their respective employment agreements, and it appears clear that they intend to continue to violate the agreements.

45.    Upon information and belief, Testa and Ryczek have utilized JCI's confidential, proprietary and trade secret information in their solicitation of, and work at, customers and/or prospective customers of JCI.

46.    In connection with their employment with Yankee, Testa and Ryczek have, and will, necessarily be called upon to use and disclose the confidential and proprietary information and materials they acquired at JCI because of their job duties and the immense value of the information they misappropriated.

47.    Testa and Ryczek have breached their employment agreements with, and

obligations to, JCI by virtue of their conduct set forth herein.

48.    Upon information and belief, Testa, Ryczek, and Yankee have misappropriated JCI's confidential and proprietary information and trade secrets, solicited JCI's customers and/or prospective customers, misappropriated JCI's business opportunities and expectancies for their benefit and to the detriment of JCI.

## COUNT I
## **BREACH OF CONTRACT**
(Against Testa)

49.    JCI realleges each and every allegation contained in paragraphs 1-48, inclusive, of this Complaint as though completely set forth herein.

50.    The Testa Agreement is a valid and enforceable contract between Testa and JCI.

51.    JCI has fully performed its obligations under the Testa Agreement.

52.    Testa's actions as set forth above, including soliciting and servicing JCI customers and potential customers serviced or solicited by him while employed at JCI, and improperly using and/or disclosing JCI confidential and proprietary information, constitute a breach of the Testa Agreement.

53.    Testa has failed to honor his obligations under the Testa Agreement, and, by his conduct, has made clear that he has no intention of complying with his obligations.

54.    As a proximate result of Testa's violations of his contractual obligations, JCI has been, and will continue to be, irreparably damaged and injured. Moreover, JCI has no adequate remedy at law for Testa's actions since the injuries JCI has suffered, and will continue to suffer, including, but not limited to, the divulgence of confidential information and trade secrets, the

loss of its competitive edge, and customer goodwill, are not readily measurable or fully compensable in damages.

55.      Testa will, unless restrained, continue to ignore his contractual duties and violate JCI's rights by continuing to solicit and provide services for customers serviced or solicited by him while employed at JCI.

56.      Accordingly, injunctive relief restraining and enjoining Testa from continuing to violate the confidentiality and non-compete clauses in the Testa Agreement is the only remedy that will afford JCI meaningful relief.

57.      To the extent that JCI can identify damages that it has suffered as a result of the loss of specific customers or revenue arising out of Testa's breach of contract, JCI is entitled to recover those monetary damages and seeks other relief as set forth herein.

**COUNT II**
**BREACH OF CONTRACT**
(Against Ryczek)

58.      JCI realleges each and every allegation contained in paragraphs 1-57, inclusive, of this Complaint as though completely set forth herein.

59.      The Ryczek Agreement is a valid and enforceable contract between Ryczek and JCI.

60.      JCI has fully performed its obligations under the Ryczek Agreement.

61.      Ryczek's actions as set forth above, including soliciting and servicing JCI customers and potential customers serviced or solicited by him while employed at JCI, and improperly using and/or disclosing JCI confidential and proprietary information, constitute a

breach of the Ryczek Agreement.

62.    Ryczek has failed to honor his obligations under the Ryczek Agreement, and, by his conduct, has made clear that he has no intention of complying with his obligations.

63.    As a proximate result of Ryczek's violations of his contractual obligations, JCI has been, and will continue to be, irreparably damaged and injured.  Moreover, JCI has no adequate remedy at law for Ryczek's actions since the injuries JCI has suffered, and will continue to suffer, including, but not limited to, the divulgence of confidential information and trade secrets, the loss of its competitive edge, and customer goodwill, are not readily measurable or fully compensable in damages.

64.    Ryczek will, unless restrained, continue to ignore his contractual duties and violate JCI's rights by continuing to solicit and provide services for customers serviced or solicited by him while employed at JCI.

65.    Accordingly, injunctive relief restraining and enjoining Ryczek from continuing to violate the confidentiality and non-compete clauses in the Ryczek Agreement is the only remedy that will afford JCI meaningful relief.

66.    To the extent that JCI can identify damages that it has suffered as a result of the loss of specific customers or revenue arising out of Ryczek's breach of contract, JCI is entitled to recover those monetary damages and seeks other relief as set forth herein.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION
(Against All Defendants)

67.    JCI realleges each and every allegation contained in paragraphs 1-66, inclusive, of this Complaint as though completely set forth herein.

68.    Testa and Ryczek owe JCI a contractual and common law duty not to use and/or disclose confidential and proprietary information acquired in the course and scope of their JCI employment.

69.    Yankee knew or should have known that Testa and Ryczek obtained confidential and proprietary information and trade secrets belonging to JCI during the course of their employment, and by hiring Testa and Ryczek in competitive positions, is unfairly using JCI's confidential and proprietary information and trade secrets to its benefit and to the detriment of JCI.

70.    By their individual and collective actions, including those described above, the defendants have misappropriated JCI's confidential and proprietary information and trade secrets in violation of the common law and Mass. Gen. L. c. 93, § 42 *et seq.*

71.    The damages resulting from the defendants' misappropriation of JCI's trade secrets and other proprietary confidential information will be difficult to quantify, and include, at a minimum, (i) the competitive advantages wrongfully imparted to Yankee; (ii) future lost sales and/or business opportunities; (iii) future lost profits; and (iv) loss of reputation, goodwill, and customer relationships.

72.    JCI will suffer substantial, immediate and irreparable harm and damages unless the defendants are enjoined from disclosing and using JCI's confidential and proprietary information and trade secrets.  JCI will not have an adequate remedy at law for the harm and damage that the actions of the defendants have caused, and will cause, and is entitled to injunctive relief enjoining the defendants from further unlawful conduct.

14

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACTUAL
## AND ADVANTAGEOUS BUSINESS RELATIONS
(Against All Defendants)

73.     JCI realleges each and every allegation contained in paragraphs 1-72, inclusive, of this Complaint as though completely set forth herein.

74.     JCI possesses valid contractual relationships and/or business expectancies with its customers. In addition, JCI possesses valid contractual relationships with Testa and Ryczek.

75.     Testa, Ryczek, and Yankee knew of JCI's business relationships and expectancies with existing customers and future business prospects.

76.     Testa, Ryczek, and Yankee intentionally and tortiously interfered with JCI's business relationships and expectancies with its customers and prospects by improperly inducing customers and prospects to terminate the relationships and/or expectancies with JCI, and otherwise obtaining business through the improper utilization of JCI's confidential and proprietary information in order to obtain an unfair competitive advantage.

77.     Testa, Ryczek, and Yankee's tortious interference has resulted in, and if unrestrained, will continue to result in, injury to JCI in the form of lost customers, revenue, and other damages.

78.     By employing Testa and Ryczek to service and solicit JCI customers and prospective customers in violation of their employment agreements of which it is and was aware, Yankee unlawfully and tortiously interfered with the employment agreements between Testa and Ryczek and JCI.

79.     As a result of the defendants' unlawful and tortious interference, JCI has been

15

damaged in the form of lost employees, lost customers, lost revenue, lost goodwill, and other immeasurable and irreparable injuries.

## COUNT V
### Violation of Mass. Gen. L. c. 93A, § 11
(Against All Defendants)

80.     JCI realleges each and every allegation contained in paragraphs 1-79, inclusive, of this Complaint as though completely set forth herein.

81.     JCI is a "person" and engages in a "trade or commerce" within the meaning of Mass. Gen. L. c. 93A, § 1.

82.     The defendants are "persons" and engaged in "trade or commerce" within the meaning of Mass. Gen. L. c. 93A, § 1.

83.     The actions of the defendants as set forth above constitute willful and knowing violations of Mass. Gen. L. c. 93A, § 11. Their wrongful practices include, but are not limited to: a) misappropriating JCI confidential and proprietary information and trade secrets and otherwise compromising its goodwill; b) tortiously interfering with JCI's contractual and advantageous business relations; and c) utilizing misappropriated JCI confidential and proprietary information and trade secrets to target JCI customers and prospective customers and otherwise engage in unfair competition.

## RELIEF REQUESTED

WHEREFORE, JCI requests the following relief:

a.     That the Court issue a temporary and permanent injunction restraining and enjoining Testa and Ryczek:

    i.     from directly or indirectly soliciting or servicing JCI customers or potential customers, as set forth in their respective employment agreements, for a period of one (1) year from the date of this Court's Order;

    ii.    from using or disclosing at any time in the future JCI's confidential business information, trade secrets, proprietary information or property;

    iii.   from interfering, in any way, with any current contract or prospective client relationship of JCI as set forth in their respective employment agreements; and

    iv.   from breaching any fiduciary obligation, including, but not limited to, using or disclosing JCI's confidential and proprietary information, misappropriating any business opportunity of JCI, and engaging in deceptive acts or statements with regard to JCI's products, services, abilities, and/or personnel, in order to gain an unfair advantage in the control systems industry

b.    That the Court issue a temporary and permanent injunction restraining and enjoining Yankee:

    i.     from using or disclosing at any time in the future JCI's confidential business information, trade secrets, proprietary information or property; and

    ii.    from using JCI's confidential and proprietary information, misappropriating any business opportunity of JCI, and engaging in deceptive acts or statements with regard to JCI's products, services, abilities, and/or personnel, in order to gain an unfair advantage in the control systems industry

c.    That this Court issue an injunction ordering Testa and Ryczek to return all JCI property to JCI, including all originals and copies of documents and computer memory

containing trade secrets, proprietary, and confidential information, including, but not

limited to, proposals made to customers, lists and addresses and phone numbers of all

JCI customers in their possession, strategic and business marketing plans, new business

presentations and/or proposals, business processes and summaries, client lists, prospect

lists, profit margins, business revenues, pricing strategies, competitive strengths and

weaknesses, and employee lists, sales and marketing information, customer account

records, training and operations material and memoranda, computer software and

systems, personnel records, code books, financial information concerning or relating to

the business, accounts and affairs of JCI;

d.    That the Court order an accounting of all profits and revenue that Testa, Ryczek, and

Yankee, and all persons acting in concert with them, received or derived from the

business dealings with individuals or entities that were customers or potential

customers of JCI; and

e.    That JCI be awarded any actual, consequential and/or other damages, to the extent

ascertainable, to which it may be entitled as a result of the defendants' unlawful

conduct, including, but not limited to costs, attorneys' fees, multiple damages, and any

and such other relief as this Court may deem just and proper in an amount to be

determined at trial, but not less than $75,000.00.

## JURY DEMAND

The plaintiff, JCI, hereby demands trial by jury on all issues triable to a jury.


Respectfully submitted,

JOHNSON CONTROL, INC.

By its attorneys,

Christopher Novello, BBO No.: 630906
Heather C. Krauss, BBO No.: 644457
John S. Lord, Jr., Esq.
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
(617) 342-4000

Dated:  June _20_ , 2005

A

EXHiBiT - A

# EMPLOYMENT AGREEMENT

In consideration of my employment or the continuation of my employment by Johnson Controls, Inc., ("Johnson Controls"):

**1. INVENTIONS.**    I shall promptly disclose to Johnson Controls or its designee any and all inventions (hereafter referred to as "Inventions"), whether patentable or unpatentable, made or conceived by me, either solely or jointly, during the term of my employment and relating to any developments or products of, or pertaining to the current and reasonably anticipated business of Johnson Controls and its subsidiaries and affiliates.

I hereby assign and agree to assign Johnson Controls, its successor and assigns, my entire right, title and interest in and to any of said inventions.

I will, without further compensation, do all lawful things, including maintaining invention records which shall be the property of Johnson Controls, rendering assistance, and executing necessary documents, as requested by Johnson Controls, at its option and expense, to file and obtain patents in the United States and foreign countries on any of said inventions, as well as to protect Johnson Controls' property interest in any of said inventions.

Any statute covering the right or entitlement in or assignment of an invention, only to the extent in conflict with the provisions of this Agreement, shall be applicable and determinative of assignability, right or entitlement in such intervention

**2. CONFIDENTIALITY.**    For a period corresponding to the term of employment and thereafter, as long as the information remains confidential or proprietary, I shall not disclose to others copy or use, except as authorized by Johnson Controls, any confidential or proprietary information of Johnson Controls or its subsidiaries and affiliates comprising any data or information, however embodied, acquired or created, concerning any aspect of the business of Johnson Controls that I may acquire or originate during my employment. This clause is not to be construed as prohibiting the use of my trade and professional skills so long as such does not violate confidential or proprietary information.

Upon termination of my employment, I will surrender to Johnson Controls any and all documents that I have in my possession incorporating any such confidential or proprietary information, including all copies thereof whether in human or machine readable form.

**3. NON-COMPETITION.**   For one year following the date of termination I will not perform services directly or indirectly in or for a business competitive with Johnson Controls, with respect to; 1) existing Johnson Controls customers or potential customers served or solicited by me or someone under my supervision while I was a Johnson Controls employee, and/or 2) potential customers who within my last 9 months of employment received or were about to receive proposals from any employee of Johnson Controls with whom I had contact. This covenant not to unfairly compete will not apply to contractors or subcontractors with whom Johnson Controls has existing or proposed business.

**4. EMPLOYEE TAMPERING.**   I will not during or for one year after my period of employment solicit, induce or recommend that any Johnson Controls employees, whom I supervised or about whom I received any confidential information, seek employment with any company competitive with the Controls Group of Johnson Controls.

**5. GENERAL.**   This agreement does not place any obligation upon Johnson Controls to employ me for any definite period, nor upon me to accept employment for any definite period.

I agree that this contract constitutes the entire agreement between myself and Johnson Controls with respect to the subject matter hereof. This Agreement may not on behalf of or in respect to Johnson Controls be modified or terminated in whole or part, except by an instrument in writing signed by an officer or other authorized executive of Johnson Controls.

I agree that this Agreement shall be binding upon my heirs, executors, or other legal representatives or assigns.

Employee Name (Please Print): _STEPHEN TESTA_

_____  Date _2/3/99_
Employee Signature

Ratification by Johnson Controls, Inc. - Location: _Boston 053_

_Dmne Biagiotti_    Date _2/12/99_
Johnson Controls - Authorized Representative

-2-

EMPLOYMENT AGREEMENT FORM
(REV 7/20/96)

EXHIBIT-"B"



# EMPLOYMENT AGREEMENT

In consideration of my employment or the continuation of my employment by Johnson Controls, Inc., hereafter referred to as "Johnson", and the bonus monies to be paid to me by Johnson under separate agreements(s):

**1. INVENTIONS.**  I shall promptly disclose to Johnsons or its designee any and all inventions (hereafter referred to as "Inventions"), whether patentable or unpatentable, made or conceived by me, either solely or jointly, during the term of my employment and relating to any developments or products of, or pertaining to the current and reasonably anticipated business of Johnson and its subsidiaries and affiliates.

I hereby assign and agree to assign to Johnson, its successors and assigns, my entire right, title and interest in and to any of said inventions.

I will, without further compensation, do all lawful things, including maintaining invention records which shall be the property of Johnson, rendering assistance, and executing necessary documents, as requested by Johnson, to enable Johnson, at its option and expense, to file and obtain patents in the United States and foreign countries on any of said inventions, as well as to protect Johnson's property interest in any of said inventions.

Any statute covering the right or entitlement in or assignment of an invention, only to the extent in conflict with the provisions of this Agreement, shall be applicable and determinative of assignability, right or entitlement in such invention.

**2. CONFIDENTIALITY.**  For a period corresponding to the term of employment and thereafter, as long as the information remains confidential or proprietary, I shall not disclose to others, copy or use, except as authorized by Johnson, any confidential or proprietary information of Johnson or its subsidiaries and affiliates comprising any data or information, however embodied, acquired or created, concerning any aspect of the business of Johnson that I may acquire or originate during my employment. This clause is not to be construed as prohibiting the use of my trade and professional skills so long as such use does not violate confidential or proprietary information.

Upon termination of my employment, I will surrender to Johnson any and all documents that I have in my possession incorporating any such confidential or proprietary information, including all copies thereof whether in human or machine readable form.

3. **NON-COMPETITION.** I will not perform services directly or indirectly in a business competitive with Johnson Controls, Inc., for, or at the premises of, any customer of Johnson Controls, Inc. This agreement not to unfairly compete is limited to:

    a.    Termination of my employment only in those cases where I voluntarily resign or I am terminated for good cause. It will not apply in cases where the work force is reduced for economic reasons or I am terminated for unsatisfactory job performance,

    b.    One year following the date of termination,

    c.    My branch territory at termination,

    d.    Existing Johnson Controls customers or potential customers, who have recieved or were about to receive proposals, within the same branch territory. It will not apply to contractors or subcontractors with whom Johnson Controls has existing or proposed business.

    e.    And, those situations in which my branch or location at termination is located within a state or province in which the laws allow enforcement of this clause by the courts.

4. **GENERAL.**    This agreement does not place any obligation upon Johnson to employ me for any definite period, nor upon me to accept employment for any definite period.

I agree that this contract constitutes the entire agreement between myself and Johnson with respect to the subject matter hereof. This Agreement may not on behalf of or in respect to Johnson be modified or terminated in whole or part, except by an instrument in writing signed by an officer or other authorized executive of Johnson.

I agree that this Agreement shall be binding upon my heirs, executors, or other legal respresentatives or assigns.

9-23-91
**Date**

*Stanley P Ryzyll*
**Employee**

*Bruce R Leeds*
**Johnson Ratification**

*Springfield*
**Branch or Location**

C

EXHIBIT - C

# ▪FOLEY

**FOLEY & LARDNER LLP**
**ATTORNEYS AT LAW**

111 NORTH ORANGE AVENUE, SUITE 1800
ORLANDO, FL  32801-2386
P. O. BOX 2193
ORLANDO, FL  32802-2193
407.423.7656 TEL
407.648.1743 FAX
www.foley.com

WRITER'S DIRECT LINE
407.244.3246
jlord@foley.com EMAIL

CLIENT/MATTER NUMBER
046308-0101

February 3, 2005

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**& REGULAR U.S. MAIL**

Stephen Testa
72 Harrington Road
Broad Brook, CT  06016

        Re:     Unfair Competition with Johnson Controls, Inc.

Dear Mr. Testa:

        This firm represents Johnson Controls, Inc. ("Johnson Controls") in connection with your Johnson Controls employment.  We understand you recently terminated your employment with Johnson Controls, and that you have taken a job with one of Johnson Controls' competitors.

        As you know, on March 14, 1988 and again on February 3, 1999, you entered into an Employment Agreement with Johnson Controls, copies of which are enclosed.  Among other terms and conditions, that agreement contained a post-employment covenant against unfair competition.  For a period of one year following your termination, you agreed not to compete with Johnson Controls.  Your Johnson Controls covenant provides that you will not perform services in a competitive business with respect to existing or certain potential Johnson Controls customers that were served or solicited by you or someone under your supervision during your Johnson Controls employment.  The services that would violate this covenant include *sales activities* as well as installation, maintenance, upgrades and repairs.

        Upon information and belief you may have engaged in these activities, which would be a violation of your agreement.  If so, you must immediately cease such activities.  Such activities would include but not be limited to any active solicitation by you of the following Johnson Controls customers:  Williams College, Cooley Dickinson Hospital, Baystate Medical Center and TJ Conway Co., Inc.

        In addition, pursuant to your Employment Agreement and under statutory and common law provisions protecting trade secrets and other confidential information, you may not, after your termination, use or disclose any information which is confidential or proprietary to Johnson Controls.  Such information includes, but is not limited to, confidential information regarding customer accounts, orders, pricing, Johnson Controls sales and marketing tools and software, and information about the compensation and evaluation of other Johnson Controls employees.

**Certified Article Number**

**7160 3901 9848 9116 1656**

**SENDERS RECORD**

| BOSTON | JACKSONVILLE | NEW YORK | SAN DIEGO/DEL MAR | TAMPA |
| BRUSSELS | LOS ANGELES | ORLANDO | SAN FRANCISCO | TOKYO |
| CHICAGO | MADISON | SACRAMENTO | SILICON VALLEY | WASHINGTON, D.C. |
| DETROIT | MILWAUKEE | SAN DIEGO | TALLAHASSEE | WEST PALM BEACH |

006.361355.1

# ▪FOLEY

Stephen Testa
February 3, 2005
Page 2

You should no longer have in your possession any property owned by Johnson Controls. This includes any data, drawings, research information, software, hardware, memos, letters, literature, *etc.* If, for any reason, you still have any such property please return it to Johnson Controls immediately.

Johnson Controls intends to protect its rights. It is imperative that you cease and desist from any activities in violation of your legal duties. Please contact me immediately if you have any questions. I can be reached at (407) 244-3246. If you are represented by counsel, please have the individual contact me.

Sincerely yours,

John S. Lord, Jr.

Enclosures

D



# ▪FOLEY

FOLEY & LARDNER LLP
ATTORNEYS AT LAW

111 NORTH ORANGE AVENUE, SUITE 1800
ORLANDO, FL 32801-2386
P. O. BOX 2193
ORLANDO, FL 32802-2193
407.423.7656 TEL
407.648.1743 FAX
www.foley.com

WRITER'S DIRECT LINE
407.244.3246
jlord@foley.com EMAIL

CLIENT/MATTER NUMBER
046308-0101

March 30, 2005

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**& REGULAR U.S. MAIL**

Stephen Testa
72 Harrington Road
Broad Brook, CT 06016

    Re:    Unfair Competition with Johnson Controls, Inc.
               SECOND AND FINAL NOTICE

Dear Mr. Testa:

    As I previously wrote to you on February 3, 2005, this firm represents Johnson Controls, Inc. ("Johnson Controls") in connection with your Johnson Controls employment. I am re-enclosing a copy of that letter as well as your March 14, 1988 and February 3, 1999 Employment Agreements with Johnson Controls.

    Among other terms and conditions, the Agreements contained post-employment covenants against unfair competition. For one year following the date of your termination, you agreed that:

> I will not perform services directly or indirectly in or for a business competitive with Johnson Controls, with respect to: 1) existing Johnson Controls customers or potential customers served or solicited by me or someone under my supervision while I was a Johnson Controls employee, and/or 2) potential customers who within my last 9 months of employment received or were about to receive proposals from any employee of Johnson Controls with whom I had contact. This covenant not to unfairly compete will not apply to contractors or subcontractors with whom Johnson Controls has existing or proposed business.

> I will not during or for one year after my period of employment solicit, induce or recommend that any Johnson Controls employees whom I supervised or about whom I received any confidential information, seek employment with any company competitive with the Controls Group of Johnson Controls.

    In addition, pursuant to your Employment Agreements and under statutory and common law provisions protecting trade secrets and other confidential information, you may not, after your termination, use or disclose any information which is confidential or proprietary to

BOSTON    JACKSONVILLE    NEW YORK    SAN DIEGO/DEL MAR
BRUSSELS    LOS ANGELES    ORLANDO    SAN FRANCISCO
CHICAGO    MADISON    SACRAMENTO    SILICON VALLEY
DETROIT    MILWAUKEE    SAN DIEGO    TALLAHASSEE

TA...
TO...
WA...
WF...

Certified Article Number

7160 3901 9848 9111 1464

SENDERS RECORD

# ▪FOLEY

Stephen Testa
March 30, 2005
Page 2

Johnson Controls. Such information includes, but is not limited to, confidential information regarding customer accounts, orders, pricing, Johnson Controls sales and marketing tools and software, and information about the compensation and evaluation of other Johnson Controls employees.

As an Account Executive at Johnson Controls you had access to highly confidential and proprietary information of Johnson Controls. Unfortunately, Johnson Controls has reason to believe that you are now employed with a direct competitor of Johnson Controls, Yankee Technology, Inc., and have been transferring highly confidential information to this competitor, in violation of your Employment Agreements. Johnson Controls has reason to believe that, in violation of your Employment Agreements, you have been in contact with representatives of the Springfield Federal Courthouse Project on behalf of Yankee Technologies. This was a project that you worked on for about a year prior to leaving Johnson Controls, and you had extensive knowledge prior to leaving JCI of pricing, the product the Company planned to use and other confidential information.

Accordingly, the purpose of this letter is to send you one final reminder of your obligations and warn you against any further violation of these obligations. Johnson Controls also demands that you explain your activities relating to your solicitation of Johnson Controls' customers and potential customers. If you have violated, or violate in the future, your contractual obligations, please be advised that Johnson Controls will pursue all available avenues of redress including legal remedies. To the extent that you have retained any confidential documents of Johnson Controls, you must return such documents and purge any computer under your control of all such matter, no later than Friday, April 8, 2005. Johnson Controls requires your written acknowledgement and acceptance of the legal obligations explained in this letter and assurance that you have taken the actions demanded.

Please respond no later than Wednesday, April 6, 2005 by signing the enclosed copy of this letter in the space provided and returning that signed copy to me by facsimile transmission as well as in the enclosed envelope.

Sincerely yours,

John S. Lord, Jr.

Enclosures
cc:    Wendy Papko, Yankee Technology, Inc.

# ▪FOLEY

Stephen Testa
March 30, 2005
Page 3

I acknowledge receipt of this letter and that I have read and understood it. I agree to restrict my activities as an employee of Yankee Technology as set forth above and in the Employment Agreements I signed with Johnson Controls, Inc. I certify that I have purged from all computers, e-mail accounts, and other storage media of any kind under my control all documents and files that I transmitted or otherwise obtained from Johnson Controls, and that I have made and will make no use of any such matter on behalf of Yankee Technology. I further certify that I will return to Johnson Controls any information which is confidential or proprietary to Johnson Controls that I still have in my possession, no later than Friday, April 8, 2005.

Dated this _____ day of April, 2005.

_____
Stephen Testa

E

EXHIBIT _E

# ▪FOLEY

**FOLEY & LARDNER LLP**
**ATTORNEYS AT LAW**

111 NORTH ORANGE AVENUE, SUITE .800
ORLANDO, FL 32801-2386
P. O. BOX 2193
ORLANDO, FL 32802-2193
407.423.7656 TEL
407.648.1743 FAX
www.foley.com

WRITER'S DIRECT LINE
407.244.3246
jlord@foley.com EMAIL

CLIENT/MATTER NUMBER
046308-0101

April 21, 2005

<u>Via Facsimile and U.S. Mail</u>

Patrick J. Sullivan
Heafitz & Sullivan, LLP
56 Chestnut Hill Avenue
Boston, MA 02135

Re:    Johnson Controls, Inc. and Stephen Testa

Dear Pat:

I write to follow up on our phone conversations about Johnson Controls, Inc. ("JCI") and your client, Stephen Testa.

You told me that you have spoken with Mr. Testa, and he has confirmed for you that he is no longer in possession of any documents or files, electronic or otherwise, of Johnson Controls. Mr. Testa told you that he had returned any documents in his possession to JCI's Boston office. Mr. Testa further told you that he has not shared with his current employer, Yankee Technology, Inc., any information about existing or potential Johnson Controls customers that would be a violation of the post-employment covenants against unfair competition that he signed. This includes information regarding the Springfield Federal Courthouse Project and the Cooley Dickinson Hospital.

In light of these representations, JCI has agreed not to pursue any claims it may have at this time against Mr. Testa. Of course, if any additional information comes to light about potential violations of the referenced Agreements (including past violations), JCI is in no way waiving its rights to seek recovery for such violations. I have drafted acknowledgements about these issues below, one for Mr. Testa to sign and one for JCI to sign. Please have your client execute the acknowledgement and return it to me, and I will have JCI do the same. Thank you for your help in this matter.

Sincerely yours,

John S. Lord, Jr.

BOSTON
BRUSSELS
CHICAGO
DETROIT

JACKSONVILLE
LOS ANGELES
MADISON
MILWAUKEE

NEW YORK
ORLANDO
SACRAMENTO
SAN DIEGO

SAN DIEGO/DEL MAR
SAN FRANCISCO
SILICON VALLEY
TALLAHASSEE

TAMPA
TOKYO
WASHINGTON, D.C.
WEST PALM BEACH

006.370241.1

# ∎FOLEY

Patrick J. Sullivan
April 21, 2005
Page 2

I acknowledge receipt of the letters dated February 3 and March 30, 2005 from counsel for Johnson Controls and that I have read and understood them. I certify that I have not transferred confidential information about customers or potential customers from Johnson Controls to Yankee Technology, including but not limited to confidential information about the Springfield Federal Courthouse Project and the Cooley Dickinson Hospital. **I agree to restrict my activities as an employee of Yankee Technology as set forth in the Employment Agreements I signed with Johnson Controls.** I certify that I have purged from all computers, e-mail accounts, and other storage media of any kind under my control all documents and files that I transmitted or otherwise obtained from Johnson Controls, or have otherwise returned them to Johnson Controls, and that I have made and will make no use of any such matter on behalf of Yankee Technology.

Dated this _____ day of April, 2005.

_____
Stephen Testa

Johnson Controls, Inc. acknowledges that Stephen Testa has made the above representations that he is abiding by his Employment Agreements with Johnson Controls. Based upon these representations, Johnson Controls agrees at this time not to pursue any actions against Mr. Testa. This acknowledgement does not waive any rights Johnson Controls has to pursue claims under the Agreements should it reasonably determine that the facts are not as they have been represented by Mr. Testa.

Dated this _____ day of April, 2005.

_____
Andrew P. Koehnke
Systems Branch Manager
Johnson Controls, Inc.

006.370241.1

F

EXHIBIT - F



**FOLEY & LARDNER LLP**
**ATTORNEYS AT LAW**

111 NORTH ORANGE AVENUE, SUITE 1800
ORLANDO, FL 32801-2386
P. O. BOX 2193
ORLANDO, FL 32802-2193
407.423.7656 TEL
407.648.1743 FAX
www.foley.com

June 13, 2005

WRITER'S DIRECT LINE
407.244.3246
jlord@foley.com EMAIL

CLIENT/MATTER NUMBER
046308-0101

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**& REGULAR U.S. MAIL**

Stanley P. Ryczek
111 Fox Run Drive
Ludlow, MA 01056

Re:    Unfair Competition with Johnson Controls, Inc.

Dear Mr. Ryczek:

This firm represents Johnson Controls, Inc. ("Johnson Controls") in connection with your Johnson Controls employment. We understand you recently terminated your employment with Johnson Controls, and that you have taken a job with one of Johnson Controls' competitors.

As you know, on September 23, 1999, you entered into an Employment Agreement with Johnson Controls, a copy of which is enclosed. Among other terms and conditions, that agreement contained a post-employment covenant against unfair competition. For a period of one year following your termination, you agreed not to compete with Johnson Controls. Your Johnson Controls covenant provides that you will not perform services in a competitive business with respect to existing or certain potential Johnson Controls customers that were served or solicited by you or someone under your supervision during your Johnson Controls employment. The services that would violate this covenant include *sales activities* as well as installation, maintenance, upgrades and repairs.

Upon information and belief you may have engaged in these activities in your employment with Johnson Controls' direct competitor, Yankee Technology, Inc., which would be a violation of your agreement. If so, you must immediately cease such activities. Such activities would include but not be limited to any active solicitation by you of the following Johnson Controls customers: Williams College and Clark Art Institute.

In addition, pursuant to your Employment Agreement and under statutory and common law provisions protecting trade secrets and other confidential information, you may not, after your termination, use or disclose any information which is confidential or proprietary to Johnson Controls. Such information includes, but is not limited to, confidential information regarding customer accounts, orders, pricing, Johnson Controls sales and marketing tools and software, and information about the compensation and evaluation of other Johnson Controls employees.

# ▪FOLEY

Stanley P. Ryczek
June 11, 2005
Page 2


You should no longer have in your possession any property owned by Johnson Controls. This includes any data, drawings, research information, software, hardware, memos, letters, literature, *etc.* If, for any reason, you still have any such property please return it to Johnson Controls immediately.

Johnson Controls intends to protect its rights. It is imperative that you cease and desist from any activities in violation of your legal duties. Please contact me immediately if you have any questions. I can be reached at (407) 244-3246. If you are represented by counsel, please have the individual contact me.

Sincerely yours,

John S. Lord, Jr.


Enclosures

006.375978.1

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Johnson Controls, Inc. | Yankee Technology, Inc., Stephen Testa, and Stanley P. Ryczek |

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Hampden County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

## 05 - 30144 - MAP

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Christopher Novello, Esq., Foley & Lardner LLP, 111 Huntington Ave.
Boston, MA 02119  Tel: (617) 342-4000

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC sec 1332

Brief description of cause:
Breach of contract and unfair trade practice

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE  6/20/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)   Johnson Controls, Inc. v. Yankee Technology, Inc.,

Stephen Testa and Stanley P. Ryczek

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

[ ]   I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

[ ]   II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

[✓]   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

[ ]   IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

[ ]   V.    150, 152, 153. 05 - 30144 - MAP

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   N/A

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                              YES [ ]    NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)
                                                              YES [ ]    NO [✓]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                              YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                              YES [ ]    NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                                              YES [✓]    NO [ ]

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [✓]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)
                                                              YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Christopher Novello, Heather C. Krauss, John S. Lord, Jr.(pending pro hac vice admittance)
ADDRESS   Foley & Lardner LLP, 111 Huntington Ave., Boston MA 02119
TELEPHONE NO.   (617) 342-4000

(CategoryForm.wpd - 5/2/05)

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.